**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AFFILIATED ORTHOPAEDIC SPECIALISTS, P.A.,<br><br>Plaintiff,<br><br>-against-<br><br>UNITED HEALTHCARE INSURANCE COMPANY,<br><br>Defendant. | Index No.:<br><br>**COMPLAINT** |

Plaintiff, Affiliated Orthopaedic Specialists, P.A. ("Plaintiff"), on assignment of Michael H. ("Patient"), by and through its attorneys, Schwartz Sladkus Reich Greenberg Atlas LLP, by way of Complaint against United Healthcare Insurance Company ("Defendant"), alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is a New Jersey medical practice registered to do business in the State of New Jersey with a principal place of business at 2186 State Highway 27, North Brunswick, New Jersey 08902.

2. Upon information and belief, Defendant is engaged in providing and/or administering health care plans or policies in the state of New Jersey.

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). The insurance policy at issue is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. The administrative remedies have been exhausted.

## FACTUAL BACKGROUND

4. Plaintiff is a medical practice comprised of physicians that specialize in orthopedic and spinal surgery.

5. On April 1, 2019, Michael H. ("Patient") underwent invasive surgical treatment of the lumbar spine, performed by one of Plaintiff's physicians. (*See*, **Exhibit A**, attached hereto.)

6. At the time of his treatment, Patient was the beneficiary of an employer-based health insurance plan for which Defendant served as claims administrator.

7. As Plaintiff is not in-network with Defendant, payment for Plaintiff's services are subject to the out-of-network provisions of Patient's insurance plan.

8. Prior to treating Patient, Plaintiff verified Patient's out-of-network insurance benefits with a representative of Defendant under reference number C6886.

9. Defendant's representative informed Plaintiff that the specific treatment Patient would receive on April 1, 2019 would be reimbursed at $23,488.00, pursuant to the out-of-network benefits available under Patient's insurance plan. (*See*, **Exhibit B**, attached hereto.)

10. Patient assigned his applicable health insurance rights and benefits to Plaintiff.

11. Pursuant to the assignment of benefits, Plaintiff submitted a Health Insurance Claim Form ("HCFA") medical bill to Defendant for Patient's April 1, 2019 treatment in the amount of $63,871.00. (*See*, **Exhibit C**, attached hereto.)

12. As per Defendant's insurance verification, Plaintiff anticipated that, of Plaintiff's charges of $63,871.00, $23,488.00 would be covered by Defendant.

13. However, in response to Plaintiff's bill, Defendant issued payment in the total amount of only $5,581.68. (*See*, **Exhibit D**, attached hereto.)

14. Plaintiff submitted multiple internal appeals to Defendant challenging Defendant's reimbursement as inconsistent with the terms of Patient's insurance plan, as well as the insurance verification process that Plaintiff and Patient relied upon. (*See*, **Exhibit E**, attached hereto.)

15. However, Defendant failed to issue any additional reimbursement in response to Plaintiff's appeals.

16. On August 5, 2019, Patient underwent additional spinal surgery, a surgical fusion procedure, also performed by one of Plaintiff's physicians. (*See*, **Exhibit F**, attached hereto.)

17. Prior to Patient's August 5, 2019 treatment, Plaintiff verified Patient's out-of-network insurance benefits with a representative of Defendant.

18. Defendant's representative informed Plaintiff that Patient's insurance plan reimburses out-of-network medical treatment in accordance with the 90th percentile of reasonable and customary rates.

19. Pursuant to published data, the 90th percentile of usual and customary rates for the treatment Plaintiff performed on Patient on August 5, 2019, in the geographic area where the treatment was performed, is $153,899.00.

20. Plaintiff submitted HCFA medical bills to Defendant at Plaintiff's billed rate of $349,398.00 for the services rendered to Patient on August 5, 2019. (*See*, **Exhibit G**, attached hereto.)

21. As per Defendant's insurance verification, Plaintiff anticipated that, of Plaintiff's charges of $349,398.00, approximately $153,899.00 would be covered by Defendant.

22. However, in response to Plaintiff's bill, Defendant issued payment in the total amount of only $19,535.20. (*See*, **Exhibit H**, attached hereto.)

23. Thus, while Defendant represented to Plaintiff that Patient's treatment would be subject to the 90th percentile of usual and customary rates, Defendant reimbursed Plaintiff $134,363.80 less than the 90th percentile of usual and customary rates for date of service August 5, 2019 ($153,899.00 – 19,535.20 = $134,363.80).

24. Plaintiff submitted multiple internal appeals to Defendant challenging Defendant's reimbursement as inconsistent with the terms of Patient's insurance plan, as well as the insurance verification process that Plaintiff and Patient relied upon. (*See*, **Exhibit I**, attached hereto.)

25. However, Plaintiff failed to issue any additional reimbursement in response to Plaintiff's appeals.

26. Upon information and belief, Defendant has failed to issue reimbursement for Patient's treatment in accordance with the terms of Patient's insurance plan.

27. Upon information and belief, when combining the two dates of service at issue, the total amount Defendant should have reimbursed Plaintiff for the medical treatment and services provided to Patient is $177,387.00.

28. However, when combining the two dates of service at issue, the total amount Defendant reimbursed Plaintiff is $25,116.88.

29. Moreover, Defendant represented to Plaintiff that Patient would receive $177,387.00 in reimbursement for services provided to Patient and Plaintiff relied on that representation to its detriment.

30. Plaintiff has thus been damaged in the total amount of $152,270.12 ($177,387.00 - $25,116.88).

31. Accordingly, Plaintiff brings this action for recovery of the outstanding balance, and Defendant's breach of fiduciary duty.

**COUNT ONE**

**FAILURE TO MAKE PAYMENTS PURSUANT TO MEMBER'S PLAN UNDER 29 U.S.C. § 1132(a)(1)(B)**

32. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 31 of the Complaint as though fully set forth herein.

33. Plaintiff avers this Count to the extent ERISA governs this dispute.

34. Section 502(a)(1), codified at 29 U.S.C. § 1132(a) provides a cause of action for a beneficiary or participant seeking payment under a benefits plan.

35. Plaintiff has standing to seek such relief based on the assignment of benefits obtained by Plaintiff from Patient.

36. Upon information and belief, Defendant acted in a fiduciary capacity in administering any claims determined to be governed by ERISA.

37. Plaintiff is entitled to recover benefits due to Patient under any applicable ERISA plan or policy.

38. As a result, Plaintiff has been damaged and continues to suffer damages in the operation of its medical practice.

**COUNT TWO**

**BREACH OF FIDUCIARY DUTY AND CO-FIDUCIARY DUTY UNDER 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105 (a)**

39. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 38 of the Complaint as though fully set forth herein.

40. 29 U.S.C. § 1132(a)(3)(B) provides a cause of action by a participant, beneficiary, or fiduciary to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

41. Plaintiff seeks redress for Defendant's breach of fiduciary duty and/or Defendant's breach of co-fiduciary duty under 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105 (a)

42. 29 U.S.C. § 1104(a)(1) imposes a "prudent man standard of care" on fiduciaries.

43. Specifically, a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter. 29 U.S.C. § 1104(a)(1).

44. 29 U.S.C. § 1105(a) imposes liability for breaches of co-fiduciaries.

45. Specifically, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 1104(a)(1) ["prudent man standard of care] of this title in the

administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. 29 U.S.C. § 1105(a).

46. Here, when Defendant acted to deny payment for the medical bills at issue herein, and when they responded to the administrative appeals initiated by Plaintiff, they were clearly acting as a "fiduciary" as that term is defined by ERISA § 1002(21)(A) because, among other reasons, Defendant acted with discretionary authority or control to deny the payment and to manage the administration of the employee benefit plan at issue as described above.

47. Here, Defendant breached its fiduciary duties by: (1) failing to issue an Adverse Benefit Determination in accordance with the requirements of ERISA and applicable regulations; (2) participating knowingly in, or knowingly undertaking to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (3) failing to make reasonable efforts under the circumstances to remedy the breach of such other fiduciary; and (4) wrongfully withholding money belonging to Plaintiff.

**CLAIM FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A. For an Order directing Defendant to pay Plaintiff $152,270.12;
B. For an Order directing Defendant to pay Plaintiff all benefits Patient would be entitled to under the insurance plan or policy issued by Defendant;
C. For compensatory damages and interest;
D. For attorney's fees and costs of suit; and
E. For such other and further relief as the Court may deem just and equitable.

Dated: New York, New York
May 27, 2020

SCHWARTZ SLADKUS
REICH GREENBERG ATLAS LLP
*Attorneys for Plaintiff*

By: /s/ Michael Gottlieb__
Michael Gottlieb
444 Madison Avenue
New York, New York 10022
(212) 743-7054